IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALVIN PERKINS, #R22915, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 3:20-cv-00220-SMY |
| ) | |
| WEXFORD HEALTH SOURCES, INC, ) | |
| SIDDIQUI, ANGELA CRAIN, ) | |
| ROB JEFFREYS, FRANK LAWRENCE, ) | |
| ZIMMER, DR. BUTALID, and ) | |
| WARDEN OF MENARD ) | |
| CORRECTIONAL CENTER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Alvin Perkins, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He asserts claims under the Eighth Amendment for deliberate indifference to serious medical needs and unconstitutional conditions of confinement and a state law claim for intentional infliction of emotional distress. (Doc. 1). He seeks monetary damages and injunctive relief. (*Id.*).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in his Complaint (Doc. 1): In December 2018,

Plaintiff was diagnosed with type 2 diabetes, a serious medical condition that if not treated correctly has the potential to destroy organs and cause death. Dr. Siddiqui prescribed Metformin on December 12, 2018 and referred Plaintiff for follow-up in the clinic. Plaintiff saw Nurse Practitioner Zimmer on December 26, 2018 and was prescribed weekly Accu-Cheks to monitor his blood sugar. Thereafter, Plaintiff should have been seen in the chronic care clinic every three months to look over his Accu-Chek results.

Plaintiff saw Dr. Butalid on April 29, 2019. He advised Dr. Butalid that he was prescribed Accu-Cheks in December 2018, but no Accu-Cheks had been done. Dr. Butalid told Plaintiff it was impossible for him to go that long without an Accu-Chek if he was diagnosed with diabetes. Plaintiff was again prescribed weekly Accu-Cheks to monitor his diabetes, but Dr. Butalid did not follow-up to make sure he got the Accu-Cheks. Plaintiff had his first Accu-Chek on September 19, 2019, approximately nine months after he was first prescribed them.

Plaintiff sent letters to Dr. Siddiqui, Health Care Unit Administrator ("HCUA") Angela Crain, NP Zimmer, and Warden Frank Lawrence advising them the Accu-Cheks were not being done, but did not receive responses. He also submitted grievances on the issue, including: Grievance #56-8-19 dated August 4, 2019, responded to by Dr. Siddiqui and HCUA Crain and reviewed by Warden Lawrence; Grievance #12-11-19 dated 10.31.19, reviewed by Warden Lawrence; and Emergency Grievance #164-11-19 dated November 14, 2019, reviewed by Warden Lawrence or someone on his behalf (the signature is illegible). Plaintiff submitted other emergency grievances to Warden Lawrence, but did not receive a response. He spoke to nurses who told him they would check into him being prescribed Accu-Cheks, but they ignored him and his complaints as well.

Defendants Dr. Siddiqui, Dr. Butalid, HCUA Crain, and NP Zimmer knew that failure to

monitor diabetes put Plaintiff at risk. He put them on notice and they did nothing. Dr. Siddiqui and HCUA Crain responded to grievances with false information stating Plaintiff was not prescribed Accu-Cheks until April 29, 2019. Dr. Siddiqui and HCUA Crain also falsely stated Plaintiff had refused 20 Accu-Cheks from April to September 2019. Plaintiff submitted grievances stating that he had not refused Accu-Cheks.

Wexford has a policy of deliberately understaffing health care units to save money despite knowledge that it deprives inmates proper medical care. Due to deliberate understaffing of the Menard health care unit by Wexford, Plaintiff was denied medical treatment for diabetes and he was subjected to unnecessary pain and suffering. IDOC Director Jeffreys and Warden Lawrence are aware of the understaffing by Wexford and that inmates like Plaintiff are denied access to medical care resulting in unnecessary pain.

IDOC Director Jeffreys and Warden Lawrence have a duty to provide inmates at Menard with medical care and they hired Wexford to provide medical care for inmates. Wexford has had over 1000 lawsuits filed against it in Illinois and other states showing that Wexford deliberately understaffed health care units and that medical personnel are inadequately trained and overworked. IDOC Director Jeffreys and Warden Lawrence ignored the many complaints, grievances, and lawsuits that put them on notice that Wexford was not in compliance with their contract to provide adequate medical care to plaintiff and other similarly situated inmates.

*Lippert v. Baldwin* is a class action lawsuit that was filed against Wexford for deliberately understaffing correctional center health care units resulting in a denial of medical care for inmates. This lawsuit notified Defendants that Wexford was not fulfilling its obligation to provide adequate medical care to Plaintiff and other inmates. IDOC Director Jeffreys and Warden Lawrence should have terminated the contract with Wexford but they turned a blind eye to the inadequate medical

care, delays in medical care, inmates being seen by nurses instead of doctors, and inadequately trained staff.  An expert wrote a report in that lawsuit that Defendants have read but they have not taken any action to make changes.  Wexford agreed to fix these issues and IDOC Director Jeffreys and Warden Lawrence were supposed to ensure that was done.

As a direct result of Wexford and Dr. Siddiqui's policy of understaffing, Plaintiff, who was diagnosed with diabetes, was not seen or examined by a foot doctor or nutritionist because Wexford has chosen not to hire either in an effort to save money.  Plaintiff's diabetes prevents him from being able to eat the foods that are served to the regular prison population.  Due to overcrowding, Defendants have fed inmates a high content and quantity of starchy foods to save money, but because of his diabetes Plaintiff cannot eat a lot of starchy foods.  If he eats starchy foods, his body turns them into sugar, too much sugar can cause him to go into shock and die.  A dietician is needed to ensure that his diet is monitored because it has the potential to kill him.  Plaintiff lost 37 pounds as a result of not being able to eat the foods served by the Menard kitchen.

Plaintiff advised Dr. Siddiqui that the food was making him sick (headaches, stomach pains, and elevated sugar levels).  Dr. Siddiqui and the Nurse Practitioner told plaintiff to watch his diet, but he could not do so because the food he was being served had no nutritional information provided.  He informed them of this issue and requested to be seen by a dietician.  Dr. Siddiqui denied Plaintiff's request to see a dietician in accordance with Wexford's policy and/or practice to deny medical care to save money.

Additionally, Plaintiff was told by Dr. Siddiqui, Dr. Butalid, and NP Zimmer to exercise.  However, Plaintiff cannot exercise in his cell because there is not adequate space.  Menard is overcrowded and single inmate cells are used to house two inmates.  He is only out of his cell three times a week for a few hours and the rest of the time he in his cell for 23-24 hours.  He told medical

staff he is not able exercise and they told him to find a way. IDOC Director Jeffreys and Warden Lawrence are aware of the overcrowding, which is causing deprivation of exercise, and have done nothing to rectify the situation. Administrative regulations require one hour out of cell a day for exercise. IDOC agreed to provide more opportunities for exercise in the *Rasho v. Baldwin* settlement. Wexford and Dr. Siddiqui have not prescribed exercise which they could do to rectify the situation. Plaintiff submitted grievances on this issue, but Warden Lawrence did not respond.

Wexford, NP Zimmer, Dr. Siddiqui, HCUA Crain, and Dr. Butalid know that diabetes is a serious medical need that requires monitoring, medication, proper diet, and exercise and that without these things Plaintiff's condition will deteriorate. The actions of Wexford, NP Zimmer, Dr. Siddiqui, Dr. Butalid, Warden Lawrence, and IDOC Director Jeffreys deliberately subjected Plaintiff to extremely harmful and hazardous conditions that they knew would cause him to suffer emotional distress. Defendants subjected him to conditions that could cause him to become sick and die.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Siddiqui, NP Zimmer, HCUA Crain, Dr. Butalid, Warden Lawrence, and Wexford for denying Plaintiff adequate medical care for his diabetes by failing to monitor Plaintiff's diabetes, failing to send him to a dietician, and failing to provide access to a proper diet and exercise.

Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against Wexford, IDOC Director Jeffreys, Warden Lawrence and Dr. Siddiqui for their policy and practice of understaffing of medical providers that led to inadequate medical care for Plaintiff's diabetes.

Count 3: Eighth Amendment claim against IDOC Director Jeffreys and Warden Lawrence for unconstitutional conditions of confinement for their policy and/or practice of overcrowding that resulted in

>> Plaintiff being double celled in a single man cell without adequate space to exercise and denying adequate recreational time.

> Count 4: State law claim for intentional infliction of emotional distress against all Defendants.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Count 1

Prison officials and medical staff violate the Eight Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* A condition is considered sufficiently serious if the failure to treat it could result in the unnecessary and wanton infliction of pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (holding allegations sufficient to state a plausible deliberate indifference claim against prison officials that allegedly obtained actual knowledge of the plaintiff's objectively serious medical condition and inadequate medical care through his coherent and highly detailed grievances and failed to exercise their authority to intervene to rectify the situation).

The allegations in the Complaint are sufficient for the deliberate indifference claim in Count 1 to proceed against Dr. Siddiqui, NP Zimmer, HCUA Crain, Dr. Butalid, and Warden Lawrence. Additionally, because Plaintiff alleges he was denied medical care as a result of a Wexford policy and/or practice to deny medical care to save money, he has stated a viable claim against Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

### Count 2

The allegations in the Complaint are sufficient for the deliberate indifference claim in Count 2 to proceed against Wexford, Dr. Siddiqui, IDOC Director Jeffreys, and Warden Lawrence.

### Count 3

Prison conditions that deprive inmates of basic human needs—food, medical care, sanitation, or physical safety—may violate the Eighth Amendment. *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Prison overcrowding is not a *per se* constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). However, overcrowding may lead to intolerable conditions, such as the deprivation of medical care, food, sanitation, or an increase in violence. *Id.*

The allegations in the Complaint are sufficient to proceed on the unconstitutional conditions of confinement claim in Count 3 against IDOC Director Jeffreys and Warden Lawrence. *See Gray v. Hardy*, 826 F.3d 1000, 1002, 1008 (7th Cir. 2016) (warden's failure to respond to prisoner's grievance complaining that he was living in a cell infested with "vermin, insects, and birds," which was causing him health problems, was sufficient to support a deliberate indifference claim against the warden); *Perez,* 792 F.3d at 781-82 (when prison officials receive

7

correspondence alerting them to "an excessive risk to inmate safety or health" and they do nothing, they may be held liable for deliberate indifference); *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001) (lack of exercise may rise to a constitutional violation where movement is denied to the point that the inmate's health is threatened).

However, to the extent Plaintiff bases his claim in part on violations of state laws or departmental regulations, he fails to state a claim under § 1983. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir.2003) (§ 1983 "protects plaintiffs from constitutional violations, not violations of state laws or ... departmental regulations and … practices."); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010) ("a violation of state law is not ground for a federal civil rights suit."). Additionally, to the extent his claims are based in part on Defendants' alleged failure to comply with the *Rasho* settlement agreement, an alleged violation of the *Rasho* settlement agreement or orders does not state a distinct constitutional claim and he must bring that claim in the Central District of Illinois where the case was litigated. *See Rasho*, No. 07-cv-1298-MMM, 2018 WL 2392847 at *6 (C.D. Ill., May 25, 2018) (stating that the "Settlement Agreement allows for the Plaintiffs to seek relief from this Court if there is a dispute as to whether or not the Defendants are in substantial compliance.").

### Count 4

When a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008).

Under Illinois law, to state a claim for intentional infliction of emotional distress, a plaintiff

must allege (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Vill. Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017); *see also Bailey v. City of Chicago*, 779 F.3d 689, 696–97 (7th Cir. 2015); *Schiller v. Mitchell*, 828 N.E.2d 323, 333 (Ill. App. Ct. 2005) (citing *Pavlik v. Kornhaber*, 761 N.E.2d 175 (Ill. 2001)).

Liberally construing the facts presented by Plaintiff, his allegations are sufficient to proceed on a claim for intentional infliction of emotional distress against all defendants.

## Injunctive Relief

Because the Complaint includes a request for injunctive relief, the Warden of Menard Correctional Center, in his/her official capacity, will be added to the docket with regard to the request for injunctive relief. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

## Official Capacity Claims

Plaintiff raises claims against each defendant in his or her individual and official capacities. With respect to Plaintiff's request for injunctive relief, the current Warden of Menard Correctional Center is the most appropriate official capacity defendant. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out). As such, the Warden of Menard Correctional Center, in his/her official capacity, will be added to the docket to carry out any injunctive relief that might be ordered. The official capacity claims against the other defendants are dismissed without prejudice.

**Disposition**

The following claims will proceed:  Count 1 against Wexford Health Sources, Inc., Dr. Siddiqui, Zimmer, Angela Crain, Dr. Butalid, and Frank Lawrence; Count 2 against Wexford Health Sources, Inc., Dr. Siddiqui, Rob Jeffreys, and Frank  Lawrence; Count 3 against Rob Jeffreys and Frank Lawrence; and Count 4 against Wexford Health Sources, Inc., Dr. Siddiqui, Zimmer, Angela Crain, Dr. Butalid, Rob Jeffreys, and Frank Lawrence.

The Clerk of Court is **DIRECTED** to **ADD** the Warden of Menard Correctional Center, in his or her official capacity, to the docket for purposes of Plaintiff's claim for injunctive relief.

The Clerk shall prepare for Wexford Health Sources, Inc., Dr. Siddiqui, Zimmer, Angela Crain, Dr. Butalid, Rob Jeffreys, Frank Lawrence, and the Warden of Menard Correctional Center (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  December 15, 2020**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

## **Notice to Plaintiff**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.